IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KAREN WARD,                                )
                                           )
                 Plaintiff,                )
                                           )         Civil Action No. 20-208
        vs.                                )         Judge Nora Barry Fischer
                                           )
                                           )
CITY LIGHTING PRODUCTS COMPANY,            )
                                           )
                 Defendant.

**MEMORANDUM OPINION**

**I. INTRODUCTION**

In this employment case, Plaintiff Karen Ward brings claims of disability discrimination under the Americans with Disabilities Act and the Pennsylvania Human Relations Act asserting that Defendant wrongfully terminated her due to her seizure disorder. (Docket No. 1). Defendant has moved for summary judgment arguing that it is entitled to judgment as a matter of law, and the Court has benefitted from oral argument in this case. (Docket No. 27; Docket No. 39). After careful consideration of the parties' positions and for the following reasons, Defendant's Motion [27] is granted.

**II. FACTUAL BACKGROUND**[1]

Karen Ward was employed at City Lighting Products Company in Sewickley, Pennsylvania, as an operations manager from September 1993 to May 31, 2019. (Docket No. 30 ¶ 1; Docket No. 33 ¶ 1). During her tenure and over the course of her lifetime, she suffered from

---

[1] The factual background derives from the undisputed evidence of record, and any disputed evidence is viewed in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor.").

a seizure disorder. (*Id.* at ¶ 4). Both Defendant and Ward's coworkers were aware of her seizure disorder because she had experienced multiple seizures while at work. (*Id.* at ¶¶ 5-7). Specifically, on March 7, 2019, Ward experienced two seizures at work in front of numerous coworkers. (*Id.* at ¶ 16). Following that incident, Ward's coworkers began treating her differently at work. For instance, when Ward was prescribed medication for her seizure condition, her coworkers requested that she keep it on her desk in case she experienced another seizure in front of them. (*Id.* at ¶¶ 18-19). Particularly, Michelle Paschl and Annette Davis, two of her coworkers who had witnessed her March 7 seizures, began to "mother" her at work by frequently checking up on her. (*Id.* at ¶ 25).

About two months later, on May 8, 2019, Ward was involved in an altercation with Paschl at work. (*Id.* at ¶¶ 30-38). The dispute allegedly arose over a billing issue for which Ward blamed Davis and Paschl, and when she came into work on May 8, Paschl confronted Ward in her office. (*Id.*). Both Ward and Paschl engaged in a verbal argument, and at one point, Ward left her office and Paschl followed her to the kitchen. (*Id.* at ¶¶ 30, 33-34). The altercation continued in the kitchen, prompting Ward's supervisor and recent ex-boyfriend of 13 years, Kevin Rape, to come see what was going on. (*Id.* at ¶ 34). While in the kitchen, Ward raised her hand and swung it at Paschl's head without making contact.[2] (*Id.* at ¶ 35). After the incident ended, Ward returned to her office, packed a few items, and left. (*Id.* at ¶ 38).

Following the May 8 episode, Defendant's General Manager, Chris Schmalzried, contacted its President, Michael Hohl, to advise him of the incident and discuss how to proceed. (*Id.* at ¶¶ 42-44, 49). Hohl told Schmalzried to investigate the incident, and an independent investigator was

---

[2] It is undisputed that Ward raised her hand and swung it at Paschl's head. (Docket No. 30 at ¶ 35; Docket No. 33 at ¶ 35). It is also undisputed that Ward has explained that she did not intend for it to hurt/frighten Paschl and that she characterized it as being in jest – "kind of like a backwards Three Stooge[s] move." (*Id.* at ¶¶ 35-36).

hired. (*Id.* at ¶¶ 50, 55). Then, on May 13, Schmalzried met with Ward at her home. (Docket No. 34-3 at 7). During that meeting, Schmalzried told Ward that "it's not healthy for you, your health isn't good" when referencing her work situation with Rape, her ex-boyfriend. (*Id.*). Schmalzried also advised Ward that while the investigation was ongoing, she was not to come into the office, but from the conversation he was under the impression that she had resigned. (Docket No. 30 at ¶¶ 53-54; Docket No. 33 at ¶¶ 53-54).

As part of the investigation, on May 16, 2019, the investigator interviewed Rape and Paschl, as well as Roger Pugliano and Mark McGuire, two other employees who were working during the altercation. (Docket No. 34-5; 34-7). All four employees stated that they heard the argument and that Ward was shouting. (*Id.*). The only two eyewitnesses in kitchen, Rape and Paschl, both stated that Ward took a swing at Paschl. (*Id.*). Rape recalled that Ward "told Ms. Paschl to 'shut the fuck up' and swung her hand to within about 'a foot' of Ms. Paschl's head – close enough to 'move her hair.'" (Docket No. 34-7 at 2). And while Paschl said "she didn't feel threatened and didn't believe 'it was a big deal' at the time," she recounted that "Ward took something from the fridge and turned and 'wound up' and her hand 'whizzed' past her hair." (*Id.* at 4).

In addition to detailing the circumstances of the May 8 altercation, the investigation also uncovered Ward's prior treatment of employees. (Docket No. 34-5; 34-7). Rape noted that other employees have described Ward as "rough" to work with, and that she takes a higher position than others by overstepping her bounds and ignoring the chain of command. (Docket No. 34-5 at 2; Docket No. 34-7 at 3). Paschl said that she had been involved in a few other arguments with Ward at work and that Ward was "[h]ard to work with [and] hard to approach." (Docket No. 34-5 at 7; Docket No. 34-7 at 3-4). And both Pugliano and McGuire described Ward as unpleasant,

confrontational, and creating an uncomfortable work environment. (Docket No. 34-5 at 9-11; Docket No. 34-7 at 4-5).

After reviewing the investigative report, on May 31, 2019, Defendant's Human Resources Director, Patrick Henneman, informed Ward that her employment was terminated. (Docket No. 30 at ¶ 58; Docket No. 33 at ¶ 58; *see also* Docket No. 34-10). On June 3, 2019, Ward emailed Henneman asking for the reason for her termination. (Docket No. 34-10). A day later, she re-sent that request, advising that she needed a reason in order to file for unemployment compensation. (*Id.*). Henneman responded that she was terminated due to her "inability to work with other employees in a productive manner." (*Id.*).

### III. PROCEDURAL HISTORY

Ward filed a two-count complaint in this Court on February 11, 2020, alleging disparate treatment under the Americans with Disabilities Act in violation of 42 U.S.C. § 12112(a), and the Pennsylvania Human Relations Act in violation of 43 PA. CONS. STAT. ANN. § 955(a). (Docket No. 1). Defendant answered Ward's complaint on May 4, 2020. (Docket No. 7). Following fact discovery, on December 9, 2020, Defendant moved for summary judgment and filed a brief in support. (Docket No. 27; Docket No. 28). Defendant also filed its statement of undisputed material facts. (Docket No. 30). On January 12, 2021, Ward countered by filing a brief in opposition, her own set of material facts, and an appendix of exhibits in support. (Docket Nos. 32-34). Two weeks later, on January 26, 2021, Defendant replied with a brief, counterstatement, and appendix of its own. (Docket Nos. 35-37). The Court held oral argument on Defendant's motion on February 8, 2021. (Docket No. 39). As such, the Court considers Defendant's motion fully briefed and ripe for disposition.

### IV. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a); *see also GEICO Cas. Co. v. Alicea*, 416 F. Supp. 3d 425, 429 (W.D. Pa. 2019) (Bloch, J.). A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015). If the movant makes that requisite showing, then Fed. R. Civ. P. 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001) (quoting *Celotex*, 477 U.S. at 322).

On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 172 (3d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* (quoting *Anderson*, 477 U.S. at 247-48) (emphasis in original)). To that end, a genuine dispute of material fact is one that could affect the outcome of the litigation. *See Morton v. Gardner*, 488 F. Supp. 3d 200, 204 (W.D. Pa. 2020) (citing *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)); *see also Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the

suit under the governing law will properly preclude the entry of summary judgment[;] [f]actual disputes that are irrelevant or unnecessary will not be counted."). And once the moving party satisfies its burden, the non-moving party must present sufficient evidence of facts that, when viewed in the light most favorable to her, demonstrate a genuine issue, in rebuttal. *Santini*, 795 F.3d at 416 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In this regard, the non-movant must come forward with more than "some metaphysical doubt as to the material facts." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 218 (3d Cir. 2015); *see also Matsushita*, 475 U.S. at 586-87. The non-movant "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Cosmetic Gallery, Inc. v. Schoeneman Corp.*, 495 F.3d 46, 51 (3d Cir. 2007) (quoting *Matsushita*, 475 U.S. at 587) (emphasis in original)).

## V. DISCUSSION

Having considered the parties' arguments in light of the relevant standards, the Court finds that there is no genuine dispute as to any material fact and that Defendant is entitled to judgment as a matter of law. Ward asserts claims of disparate treatment under the Americans with Disabilities Act in violation of 42 U.S.C. § 12112(a), and the Pennsylvania Human Relations Act in violation of 43 PA. CONS. STAT. ANN. § 955(a), both of which prohibit discrimination on the basis of a person's disability. (*See* Docket No. 1). Defendant argues that it is entitled to summary judgment on those two claims because: (1) Ward cannot make out a prima facie case of disability discrimination; and (2) even if Ward bears her initial burden of establishing a prima facie case of disability discrimination, she cannot show that Defendant's proffered reason for her termination is pretextual. (Docket No. 28 at 8-16). For her part, Ward asserts that she can produce direct evidence of discrimination; that she can establish a prima facie case; and, that Defendant's shifting reasons for her termination show pretext. (Docket No. 32).

6

As is more fully explained below, despite Ward's attempts to assert that genuine issues of material facts exist, the core facts surrounding her termination are undisputed. She worked for Defendant for over 25 years, and her coworkers were aware of her seizure disorder. (*See* Docket No. 30 ¶¶ 1-7; Docket No. 33 ¶¶ 1-7). After she experienced two seizures at work, her coworkers took an added interest in her health. (*See id.* at ¶¶ 16-19, 25). On May 8, she was involved in a verbal altercation with Paschl, and she raised her hand and swung it at Paschl's head. (*See id.* at ¶¶ 30-38). Following that incident, Defendant conducted an independent investigation that confirmed Ward's physical act and uncovered that other employees found Ward difficult to work with. (*See* Docket No. 34-5; 34-7). Thereafter, Defendant chose to terminate Ward citing an "inability to work with other employees in a productive manner." (*See* Docket No. 34-10). When viewing those undisputed facts against the applicable legal standards, in this Court's estimation, Defendant is entitled to summary judgment. The Court will address the parties' arguments, in turn.

### A. Direct Evidence

Ward's foremost argument in opposition of summary judgment is that she has produced direct evidence of discrimination. (Docket No. 32 at 7-11). Direct evidence of discrimination is evidence that is "so revealing of discriminatory animus that it is not necessary to rely on any presumption from the *prima facie* case to shift the burden of production." *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1096 n.4 (3d Cir. 1995). Ordinarily, employment discrimination claims such as the ones raised in Ward's complaint would be analyzed under the burden shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). But, where direct evidence is present, the *McDonnell Douglas* burden shifting approach is inapplicable. *See Swiekiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) ("[T]he *McDonnell Douglas* test is inapplicable where

the plaintiff presents direct evidence of discrimination."). That is so because "[i]n cases in which direct evidence of discrimination is presented, there is no need for an 'inference' of discrimination, since the discrimination itself is transparent." *Cobetto v. Wyeth Pharm.*, 619 F. Supp. 2d 142, 153 (W.D. Pa. 2007) (McVerry, J.).

In support of her claim that direct evidence of disability discrimination exists, Ward points to the comments made by Schmalzried concerning her health during their May 13 meeting and the deposition testimony of Hohl wherein he stated, "I mean obviously she had those seizures so we were worried about it and thinking that possibly the stress of the job was causing it." (*See* Docket No. 34-3 at 7; *see also* Docket No. 34-2 at 8; *see generally* Docket No. 32 at 7-11). When viewed in isolation, these comments suggest that Ward was terminated because of her seizure disorder, but when put in context they are nothing more than stray comments, which rarely, if ever, amount to direct evidence of discrimination. *See, e.g.*, *Deans v. Kennedy House, Inc.*, 587 F. App'x 731, 734 n.2 (3d Cir. 2014) ("[D]irect evidence does not include stray remarks in the workplace, particularly those made by nondecisionmakers or statements made by decisionmakers unrelated to the decisional process itself.") (quoting *Ayala-Gerena v. Bristol Myers-Squibb Co.*, 95 F.3d 86, 96 (1st Cir. 1996)). For context, when recounting that he told Ward that "it's not healthy for you, your health isn't good," Schmalzried qualified that he was referring to her working relationship with Rape, her ex-boyfriend, calling their situation "toxic" and "volatile." (Docket No. 34-3- at 7). And while Hohl's comment demonstrates that he had an awareness of her seizures, it is not direct evidence that she was terminated because of her condition. (*See* Docket No. 34-2 at 8). Accordingly, Ward has failed to present direct evidence of disability discrimination, and the Court must analyze her claims under the burden shifting framework outlined in *McDonnell Douglas*. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 271 (1989) (O'Connor, J., concurring in judgment)

("As should be apparent, the entire purpose of the *McDonnell Douglas* prima facie case is to compensate for the fact that direct evidence of intentional discrimination is hard to come by.").

### B. McDonnell Douglas

The *McDonnell Douglas* burden shifting framework is an analytical tool for assessing claims of discrimination at the summary judgment stage.[3] *See Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Businesses*, 140 S. Ct. 1009, 1019 (2020) ("For its part, *McDonnell Douglas* sought only to supply a tool for assessing claims, typically at summary judgment, when the plaintiff relies on indirect proof of discrimination."). That framework consists of three stages. First, the plaintiff must carry her initial burden of proof by establishing a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. In the ADA context, that requires that a plaintiff show: "(1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination." *Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242, 245 (3d Cir. 2020) (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)). Second, if the plaintiff carries her initial burden, then "the burden of *production* shifts to the defendant to 'articulate some legitimate, non-discriminatory reason for the employee's [termination].'" *Fuentes*

---

[3] Although the *McDonnell Douglas* framework was initially developed under Title VII of the Civil Rights Act of 1964, it has since been held to be applicable to claims under the ADA and PHRA, thus guiding the Court's analysis here. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 50-52 (2003) (applying *McDonnell Douglas* framework to ADA claim); *see also Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 156-57 (3d Cir. 1995) (holding that the *McDonnell Douglas* causation standard applied to indirectly proving disparate treatment under the ADA); *Allegheny Housing Rehabilitation Corp. v. Pa. Human Relations Com'n*, 532 A.2d 315, 317-19 (Pa. 1987) (applying "the analytical model developed by the United States Supreme Court for Title VII cases in [*McDonnell Douglas*]" with approval "for employment discrimination cases under the Human Relations Act").

*v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (quoting *McDonnell Douglas*, 411 U.S. at 802) (emphasis in original)). A defendant satisfies this burden by "introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Id.*

Third and finally, after the employer articulates its non-discriminatory reason, the burden shifts back to the plaintiff to show that the employer's reason is pretext for discrimination. *Id.* To that end, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* "[A] plaintiff who has made out a prima facie case may defeat a motion for summary judgment by *either* (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Id.* (emphasis in original). In other words, "if the plaintiff has pointed to evidence sufficiently to discredit the defendant's proffered reasons, to survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case." *Id.*

### 1. Prima Facie Case

As an initial matter, Defendant argues that Ward cannot establish a prima facie case of disability discrimination. (Docket No. 28 at 8-9). Defendant's argument focuses solely on the third prong of the prima facie analysis, maintaining that Ward cannot show that the circumstances of her termination are in any way connected to a discriminatory reason involving her seizure disorder. (*Id.*). As such, the Court finds that Ward has satisfied the first two prongs of the prima facie case:

that she is a disabled person under the ADA, and that she was otherwise qualified to perform the essential job functions.[4] In support of its position that Ward cannot satisfy the third element, Defendant principally asserts that Ward cannot produce any comparator evidence, i.e., evidence that similarly situated, non-disabled individuals were treated more fairly by Defendant, to support her claim. (*Id.*). For her part, Ward presents two possible comparators: Paschl, who was not terminated for her role in the altercation, and Derek Dunsey, an employee who punched a hole in a wall and was not fired. (Docket No. 32 at 11-12). However, because neither Paschl nor Dunsey were "similarly situated" as to Ward, they cannot be used as comparators.

The most common way of establishing that an adverse employment decision was the result of discrimination is by showing that similarly situated comparators were treated more favorably than the plaintiff. *Cf. Woodward v. Jim Hudson Luxury Cars, Inc.*, 2019 WL 4793058, at *7 (S.D. Ga. Sept. 30, 2019) ("Comparator evidence is the most common mechanism for satisfying the 'similarly situated' requirement."). "While 'similarly situated' does not mean identically situated," *see Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009) (citation omitted), "to support an inference of discrimination, a comparator must be 'similarly situated' to [the Plaintiff] in *all material respects*." *Ellis v. Bank of N.Y. Mellon Corp.*, 837 F. App'x 940, 941 (3d Cir. 2021)

---

[4] The Court recognizes that the Court of Appeals for the Third Circuit has previously found in an unreported decision that a plaintiff asserting disability discrimination on account of a "seizure disorder" was not "disabled" within the meaning of the ADA. *See Robinson v. Lockheed Martin Corp.*, 212 F. App'x 121, 123-26 (3d Cir. 2007). The Court finds that case distinguishable from the case at hand for two reasons. First, *Robinson* preceded the 2008 amendments to the ADA, which expanded the definition of "disability" under the ADA. *See Thornton v. United Parcel Serv., Inc.*, 587 F.3d 27, 34 n.3 (1st Cir. 2009) ("[The ADA Amendments Act of 2008] expanded the definition of 'disability' from the [prior] strict requirements. . . ."); *see also Del Tinto v. ClubCom, LLC*, 2012 WL 5615257, at *1 n.1 (W.D. Pa. Nov. 15, 2012) (Schwab, J.) ("The enactment of the Americans with Disabilities Act Amendment Act expanded coverage of the ADA. . . ."). Second, Defendant does not argue that Ward's seizure disorder is not considered a "disability" under that broader definition. Accordingly, the Court finds she is disabled within the meaning of the ADA.

(emphasis added). In that respect, context matters, especially in "workplace disciplinary and/or personnel actions [where] relevant factors include a "showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *McCullers v. Napolitano*, 427 F. App'x 190, 195 (3d Cir. 2011) (citation omitted); *see also Hood v. Citizens Bank of Pa.*, 2016 WL 3746366, at *8 (W.D. Pa. May 24, 2016) (Kelly, M.J.) ("To be 'similarly situated,' the plaintiff must show that 'the other employee's acts were of "comparable seriousness."'") (citation omitted)).

When applied to Ward, there are significant differentiating and mitigating circumstances that show why Defendant chose to terminate her and not Paschl or Dunsey. First, as to Paschl, while both were involved in a verbal altercation at work, Ward is the one who escalated to physical violence by taking a swing at Paschl, and Paschl did not respond in kind. *See Ellis*, 837 F. App'x at 941 (affirming District Court's finding that purported comparators were not similarly situated where the Plaintiff's actions were "far more egregious" and no other employee did "anything as extreme"). Further, during the investigation into the incident, every employee that was interviewed stated that they found Ward difficult to work with, while none had the same opinion of Paschl. (Docket No. 34-5; 34-7). Moreover, Dunsey's act of physical violence involved hitting a wall rather than another employee. Also, there is no suggestion that other employees found him difficult to work with; whereas that view of Ward was unanimous. Because "no reasonable jury could find [Ward's] conduct comparable to that of her former colleagues," she cannot rely on either Paschl or Dunsey as a comparator.[5] *See Ellis*, 837 F. App'x at 941.

---

[5] While a sufficient comparator would allow Ward to satisfy her prima facie case, comparator evidence is also commonly used in pretext showings. *See, e.g.*, *Wright v. Providence Care Ctr., LLC*, 822 F. App'x 85, 92 (3d Cir. 2020) ("A plaintiff can demonstrate pretext by presenting

Defendant argues that without comparator evidence, Ward cannot satisfy her burden of making out a prima facie case of disability discrimination. (Docket No. 28 at 8-10). However, comparator evidence is not required to establish a prima facie case. *See Anderson v. Wachovia Mort. Corp.*, 621 F.3d 261, 268-69 (3d Cir. 2010) ("Although comparative evidence is often highly probative of discrimination, it is not an essential element of a plaintiff's case.") (citation omitted)). Instead, "permissible evidence . . . 'may take a variety of forms.'" *Id.* at 270 (citation omitted). The standard is understandably flexible and "comparator evidence is not indispensable, namely [because] 'the ultimate issue is the reasons for *the individual plaintiff's* treatment, not the relative treatment of different *groups*.'" *Xu Feng v. Univ. of Delaware*, 785 F. App'x 53, 56 (3d Cir. 2019) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (emphasis in original)).

To that end, although Ward lacks a sufficient comparator, she has submitted circumstantial evidence that, when viewed in the light most favorable to her as the non-moving party, raises an inference of discrimination surrounding her termination. For instance, the stray comments concerning her health made by Hohl and Schmalzried and the "mothering" by other employees are probative of discrimination. Additionally, the temporal proximity between her seizure at work on March 7, 2019 and her termination on May 31, 2019 is likewise probative. Finally, the evidence that Ward worked for Defendant for over 25 years, faced no disciplinary infractions, and was thereafter terminated is circumstantial evidence as well. In sum, it is this Court's opinion that this circumstantial evidence is enough to raise an inference of discrimination surrounding her

---

evidence that similarly situated persons not within the plaintiff's protected class were treated more favorably by the defendant employer.") (citing *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 645 (3d Cir. 1998)). For the same reasons stated above, because neither Paschl nor Dunsey are "similarly situated" to Ward, she cannot rely on them as comparators at the pretext stage either.

termination. Thus, Ward has satisfied her initial burden of demonstrating a prima facie case of disability discrimination.

### 2. Pretext

With Ward satisfying her initial burden of establishing a prima facie case of disability discrimination, the burden of production shifts to Defendant to produce a legitimate, non-discriminatory reason for her termination. Defendant has satisfied that burden by articulating that "Plaintiff's employment was terminated based upon her act of physical aggression of swinging at Paschl during the May 8 altercation, as well as Defendant's investigation which revealed that nearly every employee who worked with Plaintiff identified her as difficult to get along with at work." (Docket No. 28 at 9). Given Defendant's explanation, the burden shifts back to Ward to show that the proffered reason is pretextual. For the reasons stated below, Ward cannot satisfy that burden.

Much of the parties' briefing is centered around pretext with Defendant arguing that Ward cannot show that its stated reason is pretextual and that it was warranted in its termination of her, (Docket No, 28 at 10-16), and Ward asserting that Defendant has proffered "shifting reasons" for her termination and that all of the other circumstances surrounding her termination (stray comments, etc.) support a finding of pretext here, (Docket No. 32 at 3-7, 11-16). To show pretext, a plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764. In other words, "a plaintiff who has made out a prima facie case may defeat a motion for summary judgment by *either* (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether

circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Id.* (emphasis in original).

Ward principally attempts to discredit Defendant's proffered reason as the true reason for her termination. If Ward were to successfully show that Defendant's reason should be disbelieved, she need not produce any further evidence of discrimination "because the factfinder may infer from the combination of the plaintiff's prima facie case and its own rejection of the employer's proffered non-discriminatory reasons that the employer unlawfully discriminated against the plaintiff and was merely trying to conceal its illegal act with the articulated reasons[.]" *Id.* "[H]owever, [Ward] cannot simply show that the employer's decision was wrong or mistaken . . . . Rather, [she] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence[.]" *Id.* at 765.

The inconsistencies that Ward attempts to point out are what she perceives as "shifting reasons" for her termination. (*See* Docket No. 32 at 3-5, 10-11). "In extreme enough cases, an employer's inconsistencies in its proffered reasons for discharge can constitute evidence of pretext." *EEOC v. Grane Healthcare Co.*, 2015 WL 5439052, at *49 (W.D. Pa. Sept. 15, 2015) (Gibson, J.) (alteration, internal quotation marks, and citation omitted). But, those extreme cases involve instances where an employer offers a new, wholly inconsistent, or unrelated rationale for its adverse action. *See, e.g.*, *Hoechstetter v. City of Pittsburgh*, 79 F. App'x 537, 539 (3d Cir. 2003) (employer offered new and unrelated reasons for termination at latter stages of litigation) (citing *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 284 (3d Cir. 2001)); *Smith v. Borough of Wilkinsburg*, 147 F.3d 272, 281 (3d Cir.1998) (employer gave entirely unrelated rationales for termination to EEOC and trial court); *EEOC v. L.B. Foster Co.*, 123 F.3d 746, 753

(3d Cir. 1997) (deposition and trial rationales were unrelated). Despite Ward's assertions, this case does not present such extreme inconsistencies.

Ward alleges that the reason that Defendant provides now: "Plaintiff's employment was terminated based upon her act of physical aggression of swinging at Paschl during the May 8 altercation, as well as Defendant's investigation which revealed that nearly every employee who worked with Plaintiff identified her as difficult to get along with at work," (Docket No. 28 at 9), is different than the one given to her in June 2019: "[her] inability to work with other employees in a productive manner." (Docket No. 34-10). However, Ward fails to recognize that the two reasons listed above are actually consistent with one another, not inconsistent. The proffered reason for her termination here, i.e. her act of physical aggression and her difficulty to work with others, is encompassed within the employer's initial stated reason – her inability to work with others. As such, Defendant's proffered reasons have not shifted, rather they have remained consistent.

Beyond her "shifting reasons" argument, Ward generally attacks the credibility of Defendant's proffered reason claiming that it should be disbelieved due to the statements from Hohl and Schmalzried as well as the length of time she was employed without discipline. (*See* Docket No. 32 at 5-7, 14-15). While these facts are probative towards her claim that Defendant's reason should be disbelieved, they fall short of demonstrating "that a reasonable factfinder could rationally find [Defendant's proffered reason] unworthy of credence." *See Fuentes*, 32 F.3d at 765. Defendant did not "attempt[] to create after-the-fact evidence to support its stated reason for [Ward's] termination," nor did it "beg[in] investigating [her alleged] misconduct prior to her disclosure of her epilepsy." *See Mascioli v. Arby's Rest. Grp., Inc.*, 610 F. Supp. 2d 419, 440 (W.D. Pa. 2009) (Conti, J.). Instead, it contemporaneously investigated her role in the altercation and has

remained consistent in its reason for terminating her following that investigation. Because she has not presented any compelling evidence to discredit Defendant's reason, Ward cannot show pretext in that manner.

Aside from discrediting the employer's reason, Ward can show pretext by demonstrating that discrimination was more likely than not a motivating or determinative cause of her termination. *Fuentes*, 32 F.3d at 764. Ward again relies on the stray comments, her coworkers' "mothering" of her, and her overall employment record in arguing that her seizure disorder was a motivating factor for her discharge. However, aside from the stray comments made after her altercation with Paschl and her March 7 seizure at work, there is no evidence in the record that her seizure disorder was a factor, let alone a motivating factor, in her termination. Moreover, following the May 8 altercation, Defendant conducted a thorough, independent investigation through which the investigator interviewed all witnesses to the incident and issued a report of his findings. Each of the witness statements relayed that Ward was the aggressor, that she took a swing at Paschl, and that she was difficult to work with. Defendant used that report as a basis to terminate Ward for her conduct. Because there is not sufficient evidence in the record to show that her seizure disorder was a motivating factor for her termination, Ward cannot show that Defendant's stated reason is pretextual. Absent such a showing of pretext, Ward cannot carry her burden under *McDonnell Douglas* and Defendant is entitled to judgment as a matter of law.

**VI. CONCLUSION**

Based on the foregoing, no genuine issue as to any material fact exists and Defendant is entitled to judgment as a matter of law. Accordingly, Defendant's Motion for Summary Judgment [27] is hereby GRANTED. An appropriate order follows.

*s/Nora Barry Fischer*

17

Nora Barry Fischer
Senior U.S. District Judge

Date:   April 30, 2021

cc/ecf:  All counsel of record.